UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

MICHELLE SCOTT,

Plaintiff,

v.                      408CV236

ALLSTATE PROPERTY & CASUALTY
INSURANCE COMPANY,

Defendant.

ORDER

## I. INTRODUCTION

This case centers on Defendant Allstate Property & Casualty Insurance Company's ("Allstate") denial of Plaintiff Michelle Scott's claim for losses arising from a fire at her home in Bloomingdale, Georgia ("the Property") in April 2007. Allstate's denial was premised on alleged material misrepresentations made by Scott and her daughter, Ayesha Joy Jackson Baker, during the insurance claim process, which breached the concealment or fraud provision found in the contract of insurance ("the Policy").

## II. BACKGROUND

In January 2007, Michelle Scott was incarcerated in Coleman, Florida as a result of federal charges for fraud and conspiracy. Doc. # 26-3 at 29-30. (Scott examination under oath). Scott never contacted Allstate, the insurer of her home, to indicate that she was being incarcerated and that she would not be occupying her home from January to November 2007. *Id.* at 34. During this time, the only persons residing in the insured home were Scott's daughters, Ayesha Joy Jackson Baker, Jessica Martin,[1] and Baker's two minor children. *Id.* at 33-34.

On 4/25/07, a fire damaged the structure and contents of the Property. Doc. # 1 at 4 (Complaint). Baker reported the fire to Allstate and represented that she was the named insured, Michelle Scott. Doc. # 26-7 at 46 (Baker examination under oath). By posing as her mother, Baker received, endorsed, and cashed a check from Allstate made payable to Scott for $2,000. *Id.* at 48-49.

On 12/27/07 (after her release from FCC Coleman), Scott submitted a sworn statement and proof of loss, claiming a loss for personal property in the amount of $15,418. Doc. # 1 at 5. On 6/11/08, Allstate denied the claim "in its entirety" because of "misrepresentations of material facts during the submission of the claim." Doc. # 1 at 12. On 8/22/08, Scott sent a letter to Allstate, pursuant to O.C.G.A. § 33-4-6,[2] demanding an appraisal and "payment of an aggregate sum of $130,000 ... less the applicable deductible and the [$40,877] recently paid to [CitiMortgage]."[3] *Id.* at 14. The demand consisted of $100,000 for repairs to the Property and $30,000 for the combined

---

[1] Jessica Martin, Scott's foster-daughter, moved out of the Property in late February or early March 2007, prior to the April 2007 fire. Doc. # 26-6 at 10 (Martin examination under oath).

[2] "In the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, not more than 50 percent of the liability of the insurer for the loss or $5,000.00, whichever is greater, and all reasonable attorney's fees for the prosecution of the action against the insurer." O.C.G.A. § 33-4-6.

[3] CitiMorgage holds the first mortgage on the Property. Doc. # 1 at 4. CitiMortgage is thus an insured under the Policy and is designated a "loss payee," entitling it to payments from the Policy. *Id.*

claim of "unscheduled personal property and additional living expenses." *Id.* at 15. Allstate rebuffed Scott's demand, doc. # 1 at 18, and Scott brought the present suit.[4]

Currently before the Court are Allstate's motions *in limine* and for summary judgment, doc. ## 25, 26, and Scott's motions to compel appraisal or arbitration, for partial summary judgment, and for leave to file a supplemental brief, doc. ## 28, 29, 37. The Court enters this consolidated Order to address all pending motions in this case.

### III. MOTION *IN LIMINE*

Allstate has moved *in limine*, to exclude, pursuant to F.R.Evid. 403,[5] "any proffered evidence or argument that the Plaintiff was not charged or convicted with the crime of fraud, arson, or any other crime relating to the fire of April 25, 2007." Doc. # 25-1 at 1. The Court fails to see any purpose for this motion since there is no suggestion (aside from the motion itself) that Scott is suspected of fraud, arson, or any crime in connection with the April 2007 fire. This motion would make sense if Scott had been investigated for arson or fraud but then either not charged or not convicted. *See e.g., Aetna Cas. & Sur. Co. v. Gosdin*, 803 F.2d 1153, 1160 (11th Cir. 1986) (agreeing "that the different standards of proof between a criminal prosecutorial decision and a civil case might mislead the jury"); *Galbraith v. Hartford Fire Ins. Co.*, 464 F.2d 225, 227 (3rd Cir. 1972) ("New Jersey law indicates that evidence of an accused's acquittal in a criminal proceeding is not admissible in a civil suit arising out of the event which formed the basis of the criminal charge."). Such concerns are not present in this case, so Allstate's motion *in limine* is denied. Doc. # 25.

### IV. ALLSTATE'S MOTION FOR SUMMARY JUDGMENT

Allstate moves for summary judgment on the grounds that Scott "is not entitled to recover under the contract of insurance ... as a result of material misrepresentations and/or omissions." Doc. # 26 at 1. Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." F.R.Civ.P. 56(c). In determining whether summary judgment is appropriate, the facts and inferences from the record are viewed in the light most favorable to the non-moving party, and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The moving party is "entitled to a judgment as a matter of law" when the nonmoving party fails to make a sufficient showing on an essential element of his case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). The mere existence of a scintilla of evidence is insufficient; rather, there must be evidence on which reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Allstate contends that summary judgment should be granted in its favor because (1) Scott's incarceration constituted a change of residence and/or (2) by representing herself as Scott, Baker, an insured person, breached the Policy's provision on concealment and fraud. Doc. # 26-1 at 4-5. The Court addresses each contention in turn.

---

[4] This case was originally brought in the State Court of Chatham County, but Allstate removed the case to this Court. Doc. # 1 at 1 (notice of removal).

[5] "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." F.R.Evid. 403.

## A. Change of Residence

The Policy required Scott to use the Property as her primary residence and that she notify Allstate of any change in the title, use, or occupancy of the residence premises. Doc. # 26-13 at 5-6. Allstate urges that Scott's incarceration was a change of residence, which precluded coverage for the April 2007 fire because she never informed Allstate of the change. Doc. # 26-1 at 5. The Court disagrees. An inmate's technical legal residence does not necessarily change during a period of incarceration, because imprisonment does not indicate intent to change residence. *Sullivan v. Freeman*, 944 F.2d 334, 337 (7th Cir. 1991). Residency is a voluntary status, and a forcible change in an individual's state of residence does not alter it. *Id.*; *see also FBS Mortg. Corp. v. State Farm Fire & Cas. Co.*, 833 F. Supp. 688, 693-94 (N.D. Ill. 1993); *Polakoff v. Henderson*, 370 F. Supp. 690, 693 (N.D. Ga. 1973), *aff'd per curiam*, 488 F.2d 977 (5th Cir. 1974)[6] ("A prisoner does not acquire a new domicile in the place of his imprisonment, but retains the domicile he had prior to incarceration."). In *FBS Mortgage*, the insurance policy did not unambiguously require continuous physical presence or forbid temporary absences by the named insured. 833 F. Supp. at 693. Thus, pursuant to the policy's definition of "residence premises" the insured's involuntary, eight-month absence from the insured premises (because of incarceration) was not grounds for denial of coverage. *Id.* The *FBS Mortgage* court reasoned that the insurer, as the drafter of the policy, could have stated exclusions clearly and specifically. *Id.* at 694 (emphasizing that exclusionary provisions will only be applied where their terms are clear, definite, and explicit).

While there is no Georgia law as precisely on point as *FBS Mortgage*, courts in this state have similarly strictly construed the "residence premises" language against insurers. *See, e.g., Roland v. Ga. Farm Bureau Mut. Ins. Co.*, 265 Ga. 776 (1995); *Hill v. Nationwide Mut. Fire Ins. Co.*, 214 Ga. App. 715 (1994). In *Roland*, the insurance policy defined "the residence premises [as] the only premises where the named insured or spouse maintains a residence other than business or farm properties." 265 Ga. at 776. The insurer denied coverage on the ground that the policy required the plaintiff, as a named insured, to live at the insured premises for coverage to be effective. *Id.* The *Roland* court disagreed and reasoned that the plaintiff could have reasonably anticipated that her coverage continued while either she or her spouse lived in the residence premises during the pendency of their marriage. *Id.* at 777.

In *Hill*, the insurance policy covered "the dwelling on the residence premises ... mainly used as a private residence" and defined "residence premises" as the "family dwelling ... where you live." 214 Ga. App. at 715. The insurer argued that the clear import of the policy's definition was that the identified premises were insured so long as the insured lived at that location. *Id.* at 716. The *Hill* court disagreed, reasoning that the coverage continued while the insured premises were temporarily vacant because the policy did not provide an explicit exclusion of coverage for that circumstance. *Id.* at 717.

The Policy in this case defines "residence premises" as "the dwelling, other structure and land located at the address stated on the Policy Declaration." Doc. # 26-13 at 5. "Dwelling," in turn, is defined as the "one, two, three or four family building structure, identified as the insured property on the Policy Declaration, where [the insured] reside[s] and which is principally used as a private residence." *Id.* The Policy also requires Scott to "inform [Allstate] of any change in title, use, or

---

[6] In *Bonner v. City of Pritchard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to 10/1/81.

3

occupancy of the residence premises." Doc. # 26-13 at 6. Based on this language and without a definite and explicit exclusion to the contrary, Scott could have reasonably anticipated continued coverage during her period of incarceration. Her incarceration was temporary and did not constitute a change of residence. There was also no change in the title, use, or occupancy of the Property,[7] so Scott did nothing wrong by not informing Allstate of her incarceration. Summary judgment is therefore denied as to Allstate's contention that Scott's incarceration constituted a change of residence. Doc. # 26.

**B. Material Misrepresentations.**

Allstate next contends that, by posing as the named insured and accepting, endorsing, and cashing a $2,000 advance made payable to Scott, Baker, an insured person, breached the Policy's concealment or fraud provision. Doc. # 26-1 at 5. That provision stated that Allstate would "not cover any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstances." Doc. # 26-13 at 7. Under a concealment or fraud provision, a willful and intentional misrepresentation of material facts made for the purpose of defrauding the insurer will void coverage. *Perry v. State Farm Fire & Cas. Co.*, 734 F.2d 1441, 1443 (11th Cir. 1984) (citing *Am. Alliance Ins. Co. v. Pyle*, 62 Ga. App. 156, 159 (1940)). "A misrepresentation is material if it 'might affect [the insurer's] action in respect to ... settlement or adjustment of the claim of the insured.'" *Id.* at 1444 (quoting *Am. Alliance Ins. Co.*, 62 Ga. App. at 159). "However, the insurer need not actually rely on the misrepresentation or suffer any prejudice therefrom." *Id.* (citing *Pittman v. Am. Mut. Fire Ins. Co.*, 129 Ga. App. 399 (1973)).

"Whether a misrepresentation is material is a jury question, unless the evidence excludes every reasonable inference except that there was or was not a material misrepresentation." *Id.* (citing *United Family Life Ins. Co. v. Shirley*, 242 Ga. 235 (1978)).

Here, neither party disputes that Baker, an insured person pursuant to the policy,[8] misrepresented herself as Scott, the named insured. Doc. # 29-1 at 3. This misrepresentation was material as a matter of law because it *actually* affected the settlement or adjustment of the claim. Allstate advanced $2,000 to Scott for additional living expenses that were unnecessary because she was incarcerated.[9] Summary judgment is hence appropriate to preclude coverage for Scott's claim for additional living expenses. Doc. # 26.

Baker's misrepresentation, however, is not material to the settlement or adjustment of Scott's claims for personal property loss and structural damage. *See generally Pierce v.*

---

[7] There was no change in occupancy because the Property was never vacant. The Property was occupied by Baker, Martin, and Baker's two minor children while Scott was incarcerated at FCC Coleman.

[8] There is some dispute as to whether Baker was an "insured person" under the Policy. The Court finds that she was. The Policy defines an "insured person" as the named insured and any relative if a resident of the insured's household. Doc. # 26-13 at 4. Because Scott resided at the Property during her period of incarceration, *see supra* section IV.A, Baker, Scott's daughter, was a resident relative pursuant to the Policy.

[9] There is confusion as to whether the $2,000 paid to Baker was for additional living expenses or for personal property (contents) loss. *See* doc. # 7 at 19 (deposition of Allstate claims adjuster, Debra Hatfield). When asked whether the $2,000 was an advance for personal property or for additional living expenses, Ms. Hatfield answers that "[i]t was a contents advance." *Id.* at 20. She later states that the purpose of the advance is "to give them some money to put in their hand for emergency purposes for whatever they need just to get them going until someone can get out there and find out the circumstances and what needs to be done." *Id.* at 21. The more reasonable conclusion is that the $2,000 advance was meant for emergency (additional) living expenses, and the Court continues its analysis accordingly.

4

*Allstate Ins. Co.*, 2008 WL 4372003, at *7-8 (N.D. Ga. 2008) (bifurcating question of materiality in summary judgment analysis between living expenses and property loss).

In response to Scott's motion for partial summary judgment, Allstate alleges that Scott made material misrepresentations in her personal property inventory list, barring recovery for personal property losses. Doc. # 35 at 8. Scott, however, disputes whether those misrepresentations were ever made, doc. # 29-1 at 8-10, and there remains a factual question as to whether any of the alleged misrepresentations were material. Summary judgment is simply not appropriate as to Scott's claim for personal property losses. Summary judgment is likewise not appropriate as to Scott's claim for structural damage to the Property. Scott has submitted an expert opinion disputing the amount paid to CitiMortgage for repairs. Doc. # 28-7. Whether that amount was adequate is a disputed question of fact that cannot be resolved at the summary judgment stage.

## V. <u>SCOTT'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

Scott moves for partial summary judgment on three separate grounds, contending that (1) Allstate "cannot rely upon its affirmative defenses, including material misrepresentation and failure to satisfy condition precedent, because they are [not pleaded] with particularity," (2) Allstate "waived it's [sic] affirmative defenses on the grounds that it renewed the insurance policy in question after the loss had occurred and after it had obtained full knowledge of facts," and (3) "the conduct, acts, or any omissions of the Plaintiff [did] not rise to the level of material misrepresentation as a matter of law." Doc. # 29 at 2. The Court addresses each of Scott's contentions in turn.

### A. Deficient Pleading of Affirmative Defenses

It is true that an affirmative defense involving fraud or misrepresentation must be pleaded with particularity. *See* F.R.Civ.P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); 61A Am. Jur. 2d *Pleading* § 361 (2010) ("Where fraud is asserted as an affirmative defense, it must also be pled with particularity in accordance with [F.R.Civ.P. 9(b)]."). It is also true that the affirmative defenses pleaded in Allstate's answer fell short of F.R.Civ.P 9(b)'s standard. Doc. # 2 at 1-2. Subsequent pleadings and discovery in this case, however, have alerted Scott to the specific instances of misrepresentation upon which Allstate's affirmative defenses are based. Because Scott is well aware of her own alleged misrepresentations and her daughter's actual misrepresentation, the Court sees no prejudice in allowing Allstate's affirmative defenses. Scott's motion for summary judgment as to deficient pleading of affirmative defenses is thus denied. Doc. # 29. The Court, however, grants Allstate leave to amend its answer. *See* F.R.Civ.P 15(a)(2) ("[A] party may amend its pleading ... with ... the court's leave. The court should freely give leave when justices so requires."). Within ten days of this Order, Allstate should amend the affirmative defenses in its answer to conform with the heightened pleading requirements in F.R.Civ.P 9(b).

### B. Waiver of Affirmative Defenses

Scott cites *Thompson v. Permanent Gen. Assurance Corp.*, 238 Ga. App. 450 (1999) for the proposition that Allstate waived its affirmative defenses by renewing the Policy on 1/24/08 and continuing coverage until the Policy was cancelled on 7/24/08. Doc. # 29-1 at 7-8. *Thompson*, however, pertains to misrepresentations in insurance applications. *See* 238 Ga. App. at 451 ("After learning of a

5

misrepresentation in the *application*, an insurer waives the defense that the misrepresentation voided the policy if it treats the policy as valid and binding and retains the insured's premiums as earned.") (emphasis added). Throughout the pleadings filed in this case, Scott's counsel repeatedly confuses misrepresentations in the application for insurance with misrepresentations in the insurance claims process. *See, e.g.*, doc. ## 34 at 3; 37 at 10-22. The difference is vital in this case. Allstate never argues that Scott made material misrepresentations in her application for the Policy. Rather, Allstate's defense is that Scott (and Baker) made material misrepresentations in the claim for loss. Those misrepresentations precluded coverage for losses arising from the April 2007 fire only. Coverage was otherwise still provided by Allstate, and, while the situation never arose, Allstate was obligated to pay for losses in any unrelated claim. Allstate's renewal of the Policy on 1/24/08 is thus a legal nullity that in no way waives the affirmative defenses asserted by Allstate now. Scott's motion for summary judgment as to waiver is therefore denied. Doc. # 29.

### C. No Material Misrepresentations

Finally, Scott cites case law for the proposition that an expression of an opinion as to value does not amount to fraud even if untrue. *See, e.g., Kohler v. Jacobs*, 138 F.2d 440 (5th Cir. 1943); *Remax v. Clark*, 244 Ga. App. 890 (2000). Scott's argument here has no merit. While an expression of an opinion as to value in a bargaining environment may not amount to fraud, an inflated or otherwise misrepresented claim in the insurance context may. Any suggestion to the contrary would undermine the very notion of insurance fraud.

Scott lastly suggests that any alleged misrepresentations were not material as a matter of law because "[n]o payment was ever made on the building, the claim involving loss to the building, or contents." Doc. # 29-1 at 10. As stated earlier, a misrepresentation is material if it "*might* affect [the insurer's] action in respect to ... settlement or adjustment of the claim of the insured." *Perry*, 734 F.2d at 1444 (emphasis added). The "insurer need not actually rely on the misrepresentation or suffer any prejudice therefrom." *Id.* Here, the misrepresentations, if true, might have affected settlement or adjustment of the claim because Allstate, had it acted upon the misrepresentations, might have paid Scott for losses she did not incur or for losses that were overstated. It makes no sense to deny Allstate the effect of the Policy's concealment or fraud provision simply because Allstate was wise to the alleged misrepresentations and denied coverage accordingly. Since it cannot be said that Scott did not make material misrepresentations as a matter of law, summary judgment is denied as to Scott's final contention. Doc. # 29.

## VI. MOTION TO COMPEL APPRAISAL OR ARBITRATION

Scott disputes the amount paid to CitiMortgage for structural damage to the Property and moves the Court to compel Allstate to participate in an appraisal/arbitration proceeding as provided in the Policy.[10] Doc. ## 28 (motion to compel); 26-13 at 26 (appraisal provision). Allstate, however, argues that (1) Scott has no standing

---

[10] "If [Scott] and [Allstate] fail to agree on the amount of loss, either party may make written demand for an appraisal. Upon such demand, each party must select a competent and impartial appraiser.... The appraisers will select a competent and impartial umpire. ... The appraisers shall then determine the amount of loss, stating separately the actual cash value and the amount of loss of each item. If the appraisers submit a written report of an agreement..., the amount of refund shall be the amount of loss. If they cannot agree, they will submit their differences to the umpire. A written award agreed upon by any two (2) will determine the amount of loss." Doc. # 26-13 at 26 (Policy's appraisal provision).

to assert a right to appraisal because her claim has been denied in its entirety, and (2) the separate and distinct duty to CitiMortgage has been satisfied by payment which was accepted and cashed. Doc. # 33 at 3. The Court disagrees.

No misrepresentations were ever made regarding structural damage to the Property. Baker's material misrepresentation and Scott's alleged material misrepresentations apply to claims for additional living expenses or personal property loss respectively. Those misrepresentations did not preclude Scott and CitiMortgage, as loss payee, from recovering for damage to the property, which was evidenced by Allstate's payment of $40,877 to CitiMortgage. Doc. # 1 at 14.

Although Allstate did have a duty to pay CitiMortgage for structural damage to the Property, that duty was not as "separate and distinct" as Allstate contends. CitiMortgage, as loss payee, was entitled to payment to the extent of the principal balance of the mortgage. The remainder of the payment (if any) belonged to Scott as homeowner. If the amount paid to CitiMortgage was indeed unduly low as Scott's expert concludes, doc. # 28-7 at 3-4, then Scott undoubtedly has an interest in ensuring that the payment to CitiMortgage was fair and reasonable.

Because the dispute over Scott's claim for structural damage to the Property is essentially one of value, the Court orders Allstate to participate in the appraisal/arbitration process provided for in the Policy. The parties bargained for this process *ab initio*, and judicial intervention is unnecessary at this time. Scott's motion to compel is thus granted. Doc. # 28. The appraisal/arbitration process should be performed expeditiously. The Court will monitor the parties' progress and intervene if the process is needlessly protracted.

Undertaken expeditiously. Court will monitor progress and call for trial if not completed.

### VII. MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF

Scott moves to file a supplemental brief premised upon the decision in *Fireman's Fund Ins. Co. v. Dean*, 212 Ga. App. 262 (1994), arguing that the Policy violates the basic minimum requirements for insurance coverage in Georgia. Doc. # 37. The Court has reviewed the supplemental brief and denies Scott's motion. *Id. Dean* is inapposite, because the concealment provision there voided the insurance policy. *See* 212 Ga. App. at 263 ("[I]t is clear that the policy is *voided* if 'an insured' conceals material facts.") (emphasis added). The comparable provision here only denies coverage on a per event basis. Moreover, much of the case law cited in Scott's motion pertains to misrepresentations in the insurance application process. Doc. # 37 at 10-11. Again, those cases are inapplicable here because Allstate alleges that misrepresentations were made in Scott's claim for loss. Scott indicates nothing else that otherwise suggests that the Policy violates the minimum requirements for insurance coverage in Georgia.

### VIII. CONCLUSION

Allstate's motion *in limine* is *DENIED*. Doc. # 25. Allstate's motion for summary judgment is *GRANTED* in part and *DENIED* in part. Doc. # 26. Scott is precluded from recovering for additional living expenses in light of Baker's material misrepresentation to Allstate. Summary judgment is inappropriate, however, as to Scott's claims for structural damage and personal property loss. Scott's motion for partial summary judgment is *DENIED* in its entirety. Doc. # 29. Scott's motion to compel arbitration or appraisal is *GRANTED*. Doc. # 28. Lastly, Scott's motion for leave to file a supplemental brief is

***DENIED***. Doc. # 37. The only issue remaining for trial is whether Scott made material misrepresentations in her claim for personal property losses.

This day of 29 March 2010

_____
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA